NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
TRUCKING EMPLOYEES OF NORTH     :
JERSEY WELFARE FUND, INC. -     :
PENSION FUND,                   :
                                :    Civil Action No. 08-02810 (JAG)
             Plaintiff,         :
                                :           OPINION
         v.                     :
                                :
M.J. PAQUET INC.,               :
                                :
             Defendant.         :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on a motion for entry of default judgment (Docket Entry No. 6) by plaintiff, Trucking Employees of North Jersey Welfare Fund Inc. - Pension Fund ("Plaintiff" or the "Pension Fund"). Plaintiff seeks entry of default judgment against defendant, M.J. Paquet, Inc. ("Defendant"), pursuant to Fed. R. Civ. P. 55(b). Plaintiff requests monetary damages stemming from Defendant's complete withdrawal from the Pension Fund. Plaintiff's motion is granted and Defendant is ordered to pay damages to Plaintiff.

### I.  FACTS

The Pension Fund is "a multi-employer pension plan", as defined by the Employment Retirement Income Security Act of 1975 ("ERISA"). 29 U.S.C. § 1002(2). The Pension Fund is administered pursuant to the provisions of a trust agreement and ERISA. (Compl. ¶ 3.)

Meanwhile, Defendant and a third party, Teamsters Local Union 560 ("Local 560"), were signatories to a collective bargaining agreement. (Id. at ¶ 5.) This collective bargaining agreement required Defendant to make pension contributions to the Pension Fund on a monthly basis. (Id. at ¶ 6.)

"On or about December 31, 2006," Defendant stopped having an obligation to make contributions to the Pension Fund after "permanently ceas[ing] all covered operations under the Plan." (Id. at ¶ 7.) This resulted in Defendant's complete withdrawal[1] from the Pension Fund.

"If an employer withdraws from a multiemployer pension plan" the employer is liable to the plan, as determined by 29 U.S.C. § 1381. According to 29 U.S.C. § 1382, the Pension Fund, as the sponsor of the fund, had an obligation to (1) determine Defendant's withdrawal liability, (2) notify Defendant of the amount of withdrawal liability, and (3) collect the amount of withdrawal liability from Defendant. The amount of withdrawal liability is determined by 29 U.S.C. § 1391.

In accordance with 29 U.S.C. § 1382, the Pension Fund notified Defendant of the amount of withdrawal liability by letter on June 22, 2007. (Id. at ¶ 10.) In that letter, the Pension Fund stated that the estimated value of Defendant's withdrawal liability amounted to $529,428.00. (Id.) The letter also provided a "payment schedule of $4,084.42 per month for 235 months commencing on August 1, 2007 and with a final payment of $2,556.53." (Id.) Moreover, the Pension Fund informed Defendant of its right to review the withdrawal liability assessment and "challenge the withdrawal liability assessment or amount through arbitration." (Id.) The

---

[1] "[A] complete withdrawal from a multiemployer plan occurs when an employer -- (1) ceases to have an obligation to contribute under the plan or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

Pension Fund also stated that, according to 29 U.S.C. § 1399(b)(2), if Defendant chose to request a review of the withdrawal liability assessment or decided to arbitrate the matter, Defendant would have to continue to make withdrawal liability payments during any review or arbitration of "the Pension Fund's withdrawal liability assessment or calculation." [2] (Id.)

The Pension Fund supplied documents concerning the withdrawal liability assessment to Defendant, upon request by Defendant's Counsel. (Id. at ¶ 12.) Defendant made the first scheduled payment on August 1, 2007. (Heim Aff. ¶ 10.) Subsequently, on September 18, 2007, "Defendant requested the Trustees of the Pension Fund to review the withdrawal liability assessment and calculation." (Id. at ¶ 12.) On December 11, 2007, however, the Pension Fund informed Defendant's counsel that their request was denied.[3] (Id. at ¶ 13.)

On February 26, 2008, the Pension Fund informed Defendant of its failure to make scheduled monthly payments "effective September 1, 2007." (Id. at ¶ 14.) Within this correspondence the Pension Fund also notified Defendant that if it did not make its "past due monthly withdrawal liability payments withing sixty (60) days . . . the entire amount of its withdrawal liability would be due." (Id.)

The Pension Fund now alleges that Defendant "is in default regarding its monthly withdrawal liability payments," (Compl. at ¶ 17). The Pension Fund further alleges that Defendant did not request "arbitration to challenge the Pension Fund's withdrawal liability assessment" within the statutory time limit provided. (Id. at ¶ 18).

---

[2] There is no such requirement contained within 29 U.S.C. § 1399(b)(2).

[3] Pursuant to 29 U.S.C. § 1399(b)(2), an employer must make a request for review within ninety (90) days of being notified of the amount of liability. If an employer makes a timely request, the pension plan sponsor must make a reasonable review of the matter.

3

The Pension Fund now requests that this Court enter judgment against Defendant. (Id.) Specifically, the Pension Fund requests that Defendant pay its entire withdrawal liability, pursuant to "29 U.S.C. § 1399(c)(5) and/or 29 U.S.C. § 1401." (Id.) Additionally, the Pension Fund requests that this Court order Defendant "to pay accrued interest on the delinquent withdrawal liability payments," liquidated damages of either "twenty percent of the withdrawal liability amount or a double interest award, whichever is greater;" along with the costs of suit and reasonable attorney's fees. (Id.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs the entry of default judgment. The Rule states:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.

FED. R. CIV. P. 55(b)(2). "The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court." F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." U.S. v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). However, "the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "Following the

entry of default, a district court can enter a final judgment without requiring further proof of damages only in limited situations." KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). For example, "no evidentiary inquiry is necessary if the claim is for a 'sum certain,'" id., or if the claim is based on "an enforceable liquidated damages clause in a contract" id. at 20. However, beyond these limited situations, "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court "has considerable latitude in determining the amount of damages." Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, a district court may conduct a hearing. FED. R. CIV. P. 55(b)(2). However, the court is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989)). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 65 (1944).

### III. JURISDICTION

Before default judgment may be entered against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

This Court has federal subject matter jurisdiction, pursuant to 28 U.S.C. § 1331. This action involves a federal question, since the dispute requires interpretation of 29 U.S.C. § 1381, 29 U.S.C. § 1382, and 29 U.S.C. § 1391. Furthermore, this Court has personal jurisdiction over Defendant, since Defendant's principal offices are located in Wayne, New Jersey.

## IV. ANALYSIS

Defendant has failed to appear, or otherwise plead, in response to the Complaint, which was filed on June 6, 2008, (Compl. at 6), and served on Defendant on August 27, 2008 (Summons Returned Executed by Pension Fund, served on Aug. 27, 2008 (Docket Entry No. 3)). Plaintiff appropriately filed an application for entry of default with this Court, (Req. for Default (Docket Entry No. 4)), prior to filing its motion for an entry of default judgment, (Mot. for Default as Pension Fund (Docket Entry No. 6)). This Court finds that default judgment is appropriate under FED. R. CIV. P. 55(b)(2).

## V. DAMAGES

Plaintiff requests $529,428.00 as the sum of the withdrawal liability owed, pursuant to "29 U.S.C. § 1399(c)(5) and/or 29 U.S.C. § 1401." (Compl. at ¶ 18.)

Additionally, Plaintiff specifically requests that this Court order Defendant "to pay accrued interest on the delinquent withdrawal liability payments," liquidated damages of either "twenty percent of the withdrawal liability amount or a double interest award, whichever is greater;" along with the costs of suit and reasonable attorney's fees. (Id.)

This latter portion of damages is requested pursuant to 29 U.S.C. § 1132(g)(2), which states that:

[T]he court shall award the plan (A) the unpaid contributions, (B) interest on the

>unpaid contributions, (C) an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of twenty percent of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.  For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2) (2009).

The Pension Fund's Trust Agreement stipulates that interest on the unpaid contributions is to be collected at a ten percent interest rate "per annum."  (Heim Aff. ¶ 18.)  The ten percent interest rate is to be collected from August 1, 2007 through May 1, 2009.  This amounts to $96,500.94.  Liquidated damages calculated at a twenty percent interest rate totals $105,885.60.  Attorney's fees have been determined to be $5,143.43.  (Grossman Aff. at ¶ 2.)  Therefore, the total amount of damages is $736,957.97.

## VI.  **CONCLUSION**

For the reasons set forth above, this Court finds that default judgment is appropriate, under FED. R. CIV. P. 55(b)(2), on all counts of the Complaint.  Plaintiff's demand for judgment is granted.

Date: May 11, 2009

       S/Joseph A. Greenaway, Jr.
       JOSEPH A. GREENAWAY, JR., U.S.D.J.